UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NOMIKI NESKES, INDIVIDUALLY; AND NOKIMI NESKES, AS PUTATIVE PERSONAL REPRESENTATIVE OF EMMANUEL NESKES,

    Plaintiffs,

v.

AMERICAN CONTRACT SYSTEMS, INC., A FOREIGN CORPORATION; O&M HALYARD, INC., A FOREIGN CORPORATION; OWENS & MINOR, INC., A FOREIGN CORPORATION; CROCI REAL ESTATE, LLC, A FLORIDA LIMITED LIABILITY COMPANY; LEESAR, INC., A FLORIDA CORPORATION; PHILIP FLEISCHHACKER; ROBERT COOK; and PENNY WALLS

    Defendants,
_____/

Case No. 2:25-cv-01017-KCD-NPM

## **ORDER**

Before the Court is Plaintiffs Nomiki Neskes, Individually, and Nokimi Neskes's, as Putative Personal Representative of Emmanuel Neskes, (collectively, Neskes) Motion to Remand to State Court and for Award of

Attorneys' Fees and Costs. (Doc. 37).[1] Defendants American Contract Systems, Inc. and O&M Halyard, Inc. (collectively, ACS) have responded (Doc. 45), making this matter ripe. As explained below, Neskes' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

Neskes is a resident of Fort Myers, Florida. In 2011, she and her husband, Emmanuel Neskes, began living near a sterilization plant allegedly operated by ACS. (Doc. 4 ¶ 64.) The facility emits ethylene oxide (EtO)—a gas used to sterilize medical equipment—which Neskes claims formed a toxic cloud over her home and caused her and her husband to develop cancer. (*Id.* ¶¶ 64-66.) Her husband has since passed away. (*Id.* ¶ 66.)

Neskes filed suit in state court, casting a wide net. She sued ACS and its parent companies. But she also sued LeeSar, Inc., a Florida corporation that hired ACS to sterilize its medical kits; Croci Real Estate, LLC, the Florida company that owns the land; and Phillip Fleischhacker, Robert Cook, and Penny Walls—individuals allegedly involved in the facility's management. (*See* Doc. 1-1.)

ACS removed the case here based on diversity jurisdiction. (Doc. 1.) "Diversity jurisdiction requires complete diversity of citizenship between

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

every plaintiff and every defendant." *Goshen Mortg. as Tr. for GDBT 1 Tr. 2011-1 v. DeBoskey*, No. 24-12314, 2025 WL 1482429, at *2 (11th Cir. May 23, 2025). ACS acknowledges that Neskes and several other defendants are all Florida citizens. (Doc. 1 ¶¶ 7-8, 13-16.) Typically, that shared citizenship would defeat diversity jurisdiction. But ACS insists that the Florida defendants—LeeSar, Croci, Cook, and Walls—were fraudulently joined. According to ACS, Neskes has no viable claim against any of them. Neskes disagrees and has moved to remand the case back to state court.

## II. Discussion

A state-court case may be removed to federal court if it could have been brought there originally. 28 U.S.C. § 1441. "Pertinent here, federal courts have original jurisdiction over . . . civil actions where [there is] diversity." *Clyde v. Progressive Am. Ins. Co.*, No. 2:25-CV-755-KCD-DNF, 2025 WL 2802427, at *1 (M.D. Fla. Oct. 2, 2025). "Diversity jurisdiction is triggered when the parties are citizens of different states and the amount in controversy exceeds $75,000." *Brittell v. CBRE, Inc.*, No. 2:25-CV-638-JLB-KCD, 2025 WL 2581815, at *1 (M.D. Fla. Aug. 29, 2025).

Cases removed based on diversity jurisdiction must be remanded to state court if the parties are not completely diverse. *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). "But there's a catch—if the plaintiff fraudulently joins a non-diverse defendant to defeat complete

3

diversity, then that non-diverse defendant is not considered" for jurisdiction purposes. *Illoominate Media, Inc. v. CAIR Fla., Inc.*, 841 F. App'x 132, 134 (11th Cir. 2020). The doctrine of fraudulent joinder is a narrow exception to the complete diversity rule. It allows a federal court to ignore the citizenship of a non-diverse defendant, but only if the removing party can show there is no legitimate basis for that defendant's presence in the suit.

The bar for fraudulent joiner is high—extremely high. *See, e.g.*, *Maxner v. Am. Cont. Sys., Inc.*, No. 2:25-CV-476-KCD-NPM, 2025 WL 3653414, at *1 (M.D. Fla. Dec. 2, 2025). It requires defendants to show by clear and convincing evidence "that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell*, 663 F.3d at 1332.

ACS relies on the first prong. (Doc. 45 at 2.) And notice what that standard does *not* say. It does not ask whether the plaintiff will win. It does not even ask whether the claim is likely to survive a motion to dismiss in federal court. *See, e.g., Kimball v. Better Bus. Bureau of W. Fla.*, 613 F. App'x 821, 823 (11th Cir. 2015); *Stillwell*, 663 F.3d at 1333. It asks only whether there is a *possibility* that a state court would find that the complaint states a cause of action. If there is even a glimmer of hope for the plaintiff's claim under state law, the federal court must find that the joinder was proper and

remand the case. *See Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006); *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The standard also requires courts to consider "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted." *Pacheco de Perez*, 139 F.3d at 1380. And it demands all factual allegations be viewed "in the light most favorable to the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

So, ACS's task is to show that Neskes' claims against the Florida defendants are essentially fictional—that under no set of facts could Florida law possibly impose liability. While ACS attacks every claim against each resident defendant, Count II alone resolves the issue. That claim alleges vicarious liability against LeeSar for ACS's EtO omissions. (Doc. 4 ¶¶ 88-94.)

"Florida courts have adopted the doctrine of strict liability for ultrahazardous or abnormally dangerous activity." *Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So. 2d 510, 512 (Fla. Dist. Ct. App. 1984). Principals who knowingly hire an independent contractor to engage in such activity can be held vicariously liable for any resulting harm. *See Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 468 (Fla. 2005) ("[A] party who employs an independent contractor to do work involving a special danger to others which the employer knows . . . to be inherent in or normal to the work . . . is subject to liability for physical harm

5

caused to such others by the contractor's failure to take reasonable precautions against such danger."); *Midyette v. Madison*, 559 So. 2d 1126, 1127 n.1 (Fla. 1990) (recognizing concept of vicarious liability for "ultrahazardous or abnormally dangerous activity, for which strict liability would exist"); *Metro. Dade Cnty. v. Fla. Aviation Fueling Co.*, 578 So. 2d 296, 299 n.4 (Fla. Dist. Ct. App. 1991) (same).

It is obviously possible that Neskes could establish this claim. As a threshold matter, she has presented sufficient facts to suggest that EtO is ultrahazardous. (Doc. 4 ¶ 27.) She does not describe a benign industrial byproduct; she details a "noxious gas" with a known "genotoxic, mutagenic, and carcinogenic" profile. (*Id.* ¶ 12.) She points to the facility's own walls, which allegedly bore OSHA placards warning of a "CANCER HAZARD." (*Id.* ¶ 263.) Determining whether that hazard rises to the level of "abnormally dangerous" is generally a question of fact—it is not a question for the Court to decide at this preliminary stage. *L.E. Myers Co. v. Young*, 165 So. 3d 1, 6 (Fla. Dist. Ct. App. 2015). Neskes also alleges that LeeSar and ACS maintained a "deeply integrated" partnership, working "hand in hand to assemble and sterilize medical devices." (Doc. 4 ¶ 50.) And LeeSar even executed a service agreement expressly anticipating EtO's use in the sterilization process. (Doc. 45-1 at 6-7.)

ACS emphasizes that LeeSar was uninvolved in any sterilization itself. Still, everything suggests LeeSar at least knew its devices were being sterilized with EtO, a known carcinogen. Tellingly, ACS offers no evidence disclaiming such knowledge. Under Florida law, if a principal employs a contractor to do work involving a special danger inherent in the work, and the principal knows about it, the principal is subject to liability. *Am. Home Assur. Co.*, 908 So. 2d at 468. Those are the basic facts here.

Given this landscape, it is impossible to say a Florida court would never entertain this claim. Whether Neskes can ultimately prove the elements of strict liability, or whether LeeSar has valid defenses, are questions for a later day. For now, it is enough that the claim is colorable. *See, e.g.*, *Luria v. T-Mobile USA, Inc.*, No. 20-24012-CIV, 2021 WL 2905377, at *6 (S.D. Fla. Jan. 13, 2021).

Because Neskes has a potential claim against LeeSar, it is a proper party to this lawsuit. And because LeeSar is a citizen of Florida, complete diversity does not exist. The inquiry ends there. We need not parse the claims against the landlord or the managers; the presence of LeeSar alone requires remand. *See M.W. v. Ford Motor Co.*, No. 8:14-CV-3132-T-24TBM, 2015 WL 1311029, at *6 (M.D. Fla. Mar. 24, 2015).

One last thing. Neskes asks for attorney's fees. The removal statute allows courts to award fees, but "only where the removing party lacked an

7

objectively reasonable basis for seeking removal." *MSP Recovery Claims, Series LLC v. Hanover Ins. Co.*, 995 F.3d 1289, 1296 (11th Cir. 2021). While ACS's arguments for removal were ultimately unpersuasive, they were not frivolous. The law on fraudulent joinder involves difficult judgment calls about the viability of state-law claims. ACS made a distinct, if unsuccessful, argument regarding the scope of liability. That is not the kind of objectively unreasonable conduct that warrants a fee award.

### III. Conclusion

The Court lacks diversity jurisdiction over this case since it involves at least one non-diverse defendant. Neskes' Motion to Remand (Doc. 37) is therefore **GRANTED IN PART** and **DENIED IN PART** as set forth above. The Clerk is **DIRECTED** to remand this case to state court by transmitting a certified copy of this Order to the Clerk for the Twentieth Judicial Circuit in and for Lee County, Florida. The state-court case was previously captioned 25-CA-005259. Following remand, the Clerk is directed to deny all pending motions and close the case.

**ORDERED** in Fort Myers, Florida on February 2, 2026.

Kyle C. Dudek
United States District Judge